UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHEN A. EMERSON,

        Plaintiff,

vs.                        Case No. 2:08-cv-560-FtM-29SPC

GERALD M. BAILEY, individually and
in his official capacity as the
Commissioner of the Florida
Department of Law Enforcement,

        Defendant.
_____

**OPINION AND ORDER**

      This matter comes before the Court on defendant's Motion to Dismiss Plaintiff's Supplemental and Amended Complaint (Doc. #22) filed on December 15, 2008. Plaintiff filed a Response and Memorandum of Law in Opposition (Doc. #23) on December 29, 2008.

**I.**

      In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274

(11th Cir. 2008)(internal quotations omitted)(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)).  The former rule -- that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004) -- has been retired by <u>Twombly</u>. <u>James River Ins. Co.</u>, 540 F.3d at 1274.  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, No. 07-1015, ___ S. Ct. ___, 2009 WL 1361536, at *2 (May 18, 2009).  The Court need not, however, accept as true legal conclusions or mere conclusory statements.  <u>Id.</u>

The Eleventh Circuit imposes "heightened pleading standard" for § 1983 cases which involve individuals entitled to assert qualified immunity.  <u>Amnesty Int'l v. Battle</u>, 559 F.3d 1170, 1179 (11th Cir. 2009).  "To state a claim under § 1983, a plaintiff must allege that he was deprived of a federal right by a person acting under color of state law. [ ] Additionally, because the defense of qualified immunity should be resolved at the earliest possible procedural moment, the complaint must allege sufficient facts for the court to determine whether the alleged constitutional violation was clearly established at the time of the incident." <u>Battle</u>, 559 F.3d at 1179 (internal citations and quotations omitted).  <u>See</u> <u>also</u> <u>Epps v. Watson</u>, 492 F.3d 1240, 1243 (11th Cir. 2007).  "To satisfy

even the heightened pleading standard for § 1983 claims, [plaintiff] need plead only "some factual detail" from which the court may determine whether Defendants' alleged actions violated a clearly established constitutional right. [ ] The heightened pleading standard does not require a complaint to cite cases demonstrating that the defendant is not entitled to qualified immunity." <u>Battle</u>, 559 F.3d at 1180(citation omitted).

Dismissal is warranted under FED. R. CIV. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989); <u>Brown v. Crawford County, Ga.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

**II.**

Plaintiff Stephen A. Emerson (Emerson or plaintiff) was employed as a law enforcement officer by the Florida Department of Law Enforcement (FDLE) from 1985 until March 28, 2008. Emerson's last position was Assistant Special Agent in Charge at the Fort Myers, Florida Regional Operations Center (ROC).

The Supplemental and Amended Complaint (Doc. #24) (the Amended Complaint) alleges that on March 13, 2008, as Emerson was walking from his office to his supervisor's office, he passed Staff Assistant Jamie Burkholder Helmuth (Helmuth) in the supply room. As Emerson passed Helmuth, he remarked in jest about her stealing something, and while standing in the door way to the supply room performed a "pat down" from her left knee to her ankle. Plaintiff

told her he was only kidding and proceeded to his supervisor's office.

After this incident, Helmuth returned to her desk and discussed the incident with others. Helmuth then called her supervisor, Special Agent Supervisor Andrew Rose (Rose), who in turn called the Office of General Counsel and the Office of Executive Investigation. Rose did not report the incident to anyone in his chain of command at the Fort Myers office, did not complete an internal investigation form, and did not suggest that Helmuth complete the form or a discrimination/ harassment inquiry form, as required by the FDLE internal guidelines.

Defendant Gerald M. Bailey, Commissioner of the FDLE, decided to begin a formal departmental investigation of Emerson, and placed Emerson on administrative leave pending the outcome. On March 13, 2008, Bailey issued a Memorandum (Doc. #24-2) advising Emerson of the formal investigation and the FDLE policies he was alleged to have violated, and further advising that Emerson was afforded the protections outlined in FLA. STAT. § 112.532 (the Law Enforcement Officer's Bill of Rights). On the same day, Inspector Tonja Bryant-Smith (Bryant-Smith), Office of Executive Investigations, issued a Memorandum (Doc. #24-3) notifying plaintiff that an administrative investigation was being conducted. Both Memoranda were delivered to plaintiff later that same day.

Inspector Bryant-Smith, assisted by Inspector Joseph Demma, conducted the investigation from March 14 through March 20, 2008,

by interviewing a number of persons, including Emerson. After summarizing the various interviews, the Amended Complaint alleges that the internal investigation violated FLA. STAT. § 112.532, Fla. Admin. Code § 111-1.001 *et seq.*, and the FDLE internal practice and procedures in six specific ways.

Inspector Bryant-Smith completed and submitted an Internal Investigation Report (the Report) to the Office of General Counsel on March 25, 2008. The Report recommends that findings of Sexual Harassment and Standards of Conduct rule violations be sustained. The Amended Complaint asserts that this Report contains internal inconsistencies, falsely represents the substance of interviews, is patently biased, and contains false and unsupported findings. The Report was reviewed by the FDLE Office of General Counsel and found to be legally sufficient. The Amended Complaint alleges that the Office of General Counsel did not follow the Florida Statutes or the FDLE's internal procedures in reaching this conclusion.

On or before March 27, 2008, Bailey decided to terminate Emerson's employment. The Amended Complaint alleges that Bailey knew or should have known that the investigation and this decision were contrary to established law, FDLE polices, and Emerson's due process rights. On March 27, 2008, Bailey issued a Memorandum (Doc. #24-4) with the subject line of "Termination of Employment" dismissing plaintiff from employment effective 5:00 p.m., Friday, March 28, 2008. This was e-mailed to Emerson's Supervisor E.J. Picolo at 8:37 a.m. on March 27, 2008; Picolo did not call Emerson

until the next morning (March 28, 2008).  Picolo told Emerson that the findings of sexual harassment and member misconduct had been sustained, and that in lieu of termination Emerson's only option was to submit a resignation to FDLE by 5:00 p.m. on March 28, 2008. Emerson asked for an extension of time to consult with counsel, but the request was denied.

At about 12:30 p.m. on March 28, 2008, Picolo told Emerson that Bailey had decided to rescind the resignation option.  Later, Picolo stated he had talked to Bailey and the Office of General Counsel, and the decision whether to put the resignation option back on the table was left up to Picolo.  Picolo made the option available, and encouraged plaintiff to resign.  Without an opportunity to confer with counsel and with the deadline running out, plaintiff submitted a two-line resignation letter.  Plaintiff never saw a copy of the Report prior to this resignation.  The Amended Complaint alleges that the termination failed to comply with FLA. STAT. § 112.532(4).

On March 29, 2008, a FDLE spokesperson notified the press that plaintiff resigned after an internal investigation concluded that he had violated the FDLE's sexual harassment and employee behavior policies.

On April 1, 2008, plaintiff requested a Name Clearing Hearing. On the same day, Assistant Commissioner Kenneth S. Tucker filed an Affidavit of Separation (Doc. #24-7) with the Criminal Justice Standards Training Commission (CJSTC) stating that plaintiff had

voluntarily separated from employment while being investigated for sexual harassment.

The name clearing hearing was conducted on May 6, 2008, and plaintiff submitted evidence through counsel. The Amended Complaint alleges, without any factual support, that FDLE and Bailey had determined before the hearing that it would not reconsider its position that Emerson had voluntarily resigned or the findings of the Report. The Amended Complaint alleges that Emerson was not afforded due process because the hearing was not "meaningful." On May 8, 2008, the FDLE formally issued the decision that Emerson had voluntarily resigned and that his status would remain unchanged. (Doc. #24-6.)

In response to the Tucker Affidavit, CJSTC performed their mandatory investigation to consider the revocation of plaintiff's certification as a law enforcement officer in the State of Florida. Bailey recommended a finding of probable cause for sexual harassment. On September 16, 2008, a Panel of the CJSTC convened and found no probable cause to pursue disciplinary action against plaintiff's certification based on sexual harassment. (Docs. #24-8, #24-9.)

The Amended Complaint alleges that Bailey, both individually and as Commissioner of the FDLE, violated Emerson's due process rights under the Fourteenth Amendment to the United States Constitution. Count I of the Amended Complaint names Bailey in his official capacity and seeks "prospective injunctive relief,

including reinstatement, and costs ancillary to such injunctive relief." (Doc. #24, p. 24.) Count II names Bailey in his individual capacity and seeks monetary damages. Plaintiff alleges that he enjoyed a property interest in his employment with FDLE pursuant to FLA. STAT. § 112.532, and enjoyed a liberty interest in his own good name, his right to pursue his chosen career path, and his right to take advantage of other employment opportunities.

### III.

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must allege and prove that (1) defendant deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Plaintiff also must allege and prove an affirmative causal connection between defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).

### A.

Bailey first argues that the Count I official capacity claim should be dismissed because as Commissioner of the FDLE, an agency of the State of Florida, he is entitled to Eleventh Amendment

immunity.  The Court finds that while the Eleventh Amendment applies to Bailey in the official capacity claim, the relief requested in Count I falls within a well-recognized exception.

The Eleventh Amendment precludes suits by citizens against their own States in federal court. Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (2004); Miccosukee Tribe of Indians v. Florida State Ath. Comm'n, 226 F.3d 1226, 1231 (11th Cir. 2000). A "state" for Eleventh Amendment purposes includes certain state agents and state instrumentalities, Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000), and state officials sued in their official capacities, McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997).  The Eleventh Amendment bars such suits in federal court unless the state consents or waives its immunity.  Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989).  Congress has not abrogated Eleventh Amendment immunity for states in 42 U.S.C. § 1983 cases.  Quern v. Jordan, 440 U.S. 332, 338 (1979); Williams v. Bd. of Regents of the Univ. Sys. of Ga., 477 F.3d 1282, 1301-02 (11th Cir. 2007).  The Florida legislature has not waived Eleventh Amendment immunity. Gamble v. Florida Dep't of Health & Rehabilitative Servs., 779 F.2d 1509, 1515 (11th Cir. 1986)(discussing FLA. STAT. § 768.28).

The Department of Law Enforcement was statutorily created as part of the executive branch of the State of Florida.  FLA. STAT. §§ 20.04(1), 20.201.  The Court finds that defendant Bailey, as the Commissioner of the FDLE, is acting as an arm of the state when he

acts in his official capacity.  His function as an arm of the State of Florida is clearly described in the Amended Complaint, Doc. #24, ¶¶ 11-15.  Therefore, Count I of the Amended Complaint is due to be dismissed under the Eleventh Amendment unless an exception applies.

Under the doctrine of *Ex parte* Young, 209 U.S. 123, 155-56 (1908), prospective injunctive relief is permitted against a state officer sued in his official capacity to prevent a continuing violation of federal law.  <u>Summit Med. Assocs., P.C. v. Pryor</u>, 180 F.3d 1326, 1336 (11th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1012 (2000).  *Ex parte* Young "provides an exception to Eleventh Amendment immunity for lawsuits against state officials as long as the plaintiffs seek only prospective injunctive relief to stop ongoing violations of federal law."  <u>Friends of Everglades v. S. Fla. Water Mgmt. Dist.</u>, No. 07-13829, ___ F.3d ___, 2009 WL 1545551 (11th Cir. June 4, 2009).  On the other hand, *Ex parte* Young does not allow a federal court to grant retrospective relief designed to remedy past violations of federal law.  <u>Doe by & Through Doe v. Chiles</u>, 136 F.3d 709, 719 (11th Cir. 1998).

Count I of the Amended Complaint seeks "prospective injunctive relief, including reinstatement, and costs ancillary to such injunctive relief."  (Doc. #24, p. 24.)  The Eleventh Circuit has held that a request for reinstatement is prospective injunctive relief not barred by the Eleventh Amendment.  <u>Cross v. Alabama Dep't of Mental Health & Mental Retardation</u>, 49 F.3d 1490, 1503 (11th Cir. 1995); <u>Lassiter v. Alabama A & M Univ., Bd. Of Trs.</u>, 3

F.3d 1482, 1485 (11th Cir. 1993), <u>reh'g granted, rev'd on other</u>
<u>grounds</u>, 28 F.3d 1146 (11th Cir. 1994), <u>overruled on other grounds</u>,
<u>Hope v. Pelzer</u>, 536 U.S. 730 (2002).  Accordingly, given the nature
of the relief sought in Count I, the motion to dismiss Count I on
the basis of the Eleventh Amendment is denied.

**B.**

Both counts of the Amended Complaint allege that Bailey
deprived plaintiff of his Fourteenth Amendment right to procedural
due process.[1]  Bailey seeks dismissal of Count I and Count II
because the Amended Complaint fails to state a claim upon which
relief can be granted for a violation of procedural due process
rights.  Bailey argues that plaintiff was an "at will" employee and
therefore did not have a property interest in the employment and as
a matter of law was not owed procedural due process.
Alternatively, Bailey argues that the Amended Complaint establishes
that plaintiff was given all the process which was due him, and
therefore fails to state a claim.

The Due Process Clause "protects against the government's
deprivation of liberty or property without procedural due process."
<u>Warren v. Crawford</u>, 927 F.2d 559, 562 (11th Cir. 1991).  To
establish a procedural due process claim plaintiff must satisfy a
three-part test by showing (1) a deprivation of a constitutionally-

---

[1]Plaintiff concedes that the reference to the Fifth Amendment
was erroneous.  (Doc. #23, p. 6, n.4.)

protected property or liberty interest (2) by state action[2] (3)
through a constitutionally inadequate process. Foxy Lady, Inc. v.
City of Atlanta, Ga., 347 F.3d 1232, 1236 (11th Cir. 2003).

**(1) Property Interest:**

Unless state law provides plaintiff with a legitimate
expectation of continued employment which rises to the level of a
property right, he has no procedural due process claim under the
United States Constitution. Lassiter v. Alabama A & M Univ., Bd.
of Trs., 28 F.3d 1146, 1148 (11th Cir. 1994)(en banc).

> A public employee has a property interest in employment
> if existing rules or understandings that stem from an
> independent source such as state law create a legitimate
> claim of entitlement. [ ] This determination requires an
> examination of relevant state law. [ ] Generally, a
> public employee has a property interest in continued
> employment if state law or local ordinance in any way
> limits the power of the appointing body to dismiss an
> employee.

Ross v. Clayton County, Ga., 173 F.3d 1305, 1307 (11th Cir. 1999)
(internal quotation and citations omitted). This determination
requires the Court to look beyond labels to the controlling
principles of state law and the substance of the employee's status.
Ross, 173 F.3d at 1308. A property interest can be created by an
agency handbook of personnel policies, Nicholson v. Gant, 816 F.2d
591, 597 (11th Cir. 1987), or personnel rules, Marshall v. City of
Cape Coral, Fla., 797 F.2d 1555, 1559 (11th Cir. 1986). However,
"[w]hile protected property interests in continued employment can

---

[2]There is no dispute in this case that plaintiff has
sufficiently alleged state action.

-12-

arise from the policies and practices of an institution, [ ] a property interest contrary to state law cannot arise by informal custom." <u>Brett v. Jefferson County, Ga.</u>, 123 F.3d 1429, 1434 (11th Cir. 1997)(internal citation omitted).

The Amended Complaint alleges that plaintiff "enjoyed a property interest in his employment by the FDLE," <u>see</u> Doc. #24, ¶ 104, but this legal conclusion is no more binding than defendant's assertion that defendant was an "at will" employee. The March 27, 2008, Termination of Employment (Doc. #24-4) letter attached to the Amended Complaint states that plaintiff is a member of the Selected Exempt Service, that he serves "at the pleasure of the Commissioner," and that he is an employee without Career Service status. However, Inspector Bryant-Smith's March 13, 2008 Memorandum states that plaintiff may have rights under Florida Statute § 110.227(5) and that as a sworn law enforcement officer plaintiff is afforded additional rights under Florida Statute § 112.532.

The question framed by the Amended Complaint is therefore whether the Police Officer's Bill of Rights, Florida Statute § 112.532, provides sufficient limitations on defendant's unfettered ability to terminate plaintiff's employment to create a property interest in his employment with the FDLE. The statute provides in part:

> All law enforcement officers and correctional officers employed by or appointed to a law enforcement agency or

a correctional agency shall have the following rights and privileges:

(1) Rights of law enforcement officers and correctional officers while under investigation.--Whenever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any reason which could lead to disciplinary action, demotion, or dismissal, such interrogation shall be conducted under the following conditions:

(a) The interrogation shall be conducted at a reasonable hour, preferably at a time when the law enforcement officer or correctional officer is on duty, unless the seriousness of the investigation is of such a degree that immediate action is required.

(b) The interrogation shall take place either at the office of the command of the investigating officer or at the office of the local precinct, police unit, or correctional unit in which the incident allegedly occurred, as designated by the investigating officer or agency.

(c) The law enforcement officer or correctional officer under investigation shall be informed of the rank, name, and command of the officer in charge of the investigation, the interrogating officer, and all persons present during the interrogation. All questions directed to the officer under interrogation shall be asked by or through one interrogator during any one investigative interrogation, unless specifically waived by the officer under investigation.

(d) The law enforcement officer or correctional officer under investigation shall be informed of the nature of the investigation prior to any interrogation, and he or she shall be informed of the names of all complainants. All identifiable witnesses shall be interviewed, whenever possible, prior to the beginning of the investigative interview of the accused officer. The complaint and all witness statements shall be provided to the officer who is the subject of the complaint prior to the beginning of any investigative interview of that officer. An officer, after being informed of the right to review witness statements, may voluntarily waive the provisions of this paragraph and provide a voluntary statement at any time.

(e) Interrogating sessions shall be for reasonable periods and shall be timed to allow for such personal necessities and rest periods as are reasonably necessary.

(f) The law enforcement officer or correctional officer under interrogation shall not be subjected to offensive language or be threatened with transfer, dismissal, or disciplinary action. No promise or reward shall be made as an inducement to answer any questions.

(g) The formal interrogation of a law enforcement officer or correctional officer, including all recess periods, shall be recorded on audio tape, or otherwise preserved in such a manner as to allow a transcript to be prepared, and there shall be no unrecorded questions or statements. Upon the request of the interrogated officer, a copy of any such recording of the interrogation session must be made available to the interrogated officer no later than 72 hours, excluding holidays and weekends, following said interrogation.

(h) If the law enforcement officer or correctional officer under interrogation is under arrest, or is likely to be placed under arrest as a result of the interrogation, he or she shall be completely informed of all his or her rights prior to the commencement of the interrogation.

(i) At the request of any law enforcement officer or correctional officer under investigation, he or she shall have the right to be represented by counsel or any other representative of his or her choice, who shall be present at all times during such interrogation whenever the interrogation relates to the officer's continued fitness for law enforcement or correctional service.

(j) Notwithstanding the rights and privileges provided by this part, this part does not limit the right of an agency to discipline or to pursue criminal charges against an officer.
. . .

(4)(a) Notice of disciplinary action. -- No dismissal, demotion, transfer, reassignment, or other personnel action which might result in loss of pay or benefits or which might otherwise be considered a punitive measure shall be taken against any law enforcement officer or correctional officer unless such law enforcement officer or correctional officer is notified of the action and the

> reason or reasons therefor prior to the effective date of such action.
>
> (b) . . . the officer shall, upon request, be provided with a complete copy of the investigative report and supporting documents and with the opportunity to address the findings in the report with the employing law enforcement agency prior to the imposition of the disciplinary action consisting of suspension with loss of pay, demotion, or dismissal. The contents of the complaint and investigation shall remain confidential until such time as the employing law enforcement agency makes a final determination whether or not to issue a notice of disciplinary action consisting of suspension with loss of pay, demotion, or dismissal. <u>This paragraph shall not be construed to provide law enforcement officers with a property interest or expectancy of continued employment, employment, or appointment as a law enforcement officer</u>.

FLA. STAT. § 112.532 (2008)(emphasis added).[3]  Despite the last sentence, the Police Officer's Bill of Rights has been construed as conferring a property interest in continuing employment for permanent, non-probationary officers. <u>Grice v. City of Kissimmee</u>, 697 So. 2d 186, 190 (Fla. 5th DCA 1997)("We hold that the rights conferred by this provision give police officers a property interest in their positions."); <u>Park v. City of W. Melbourne</u>, 927 So. 2d 5, 8 (Fla. 5th DCA 2006).

In <u>Bailey v. Town of Lady Lake, Fla.</u>, 5:05-cv-464-Oc-10GRJ, 2007 WL 677995, *7 (M.D. Fla. Mar. 5, 2007), the Court found that FLA. STAT. § 112.532 arguably created a property interest in an officer's employment that could be protected, stating

> This statute sets forth a detailed series of procedures for investigating and/or disciplining law enforcement and

---

[3]This statute was amended effective July 1, 2009.

> corrections officers, up to and including termination.
> In other words, FLA. STAT. § 112.532 "limits the power of
> the appointing body to dismiss an employee."
> Accordingly, the Court finds that, at least at this stage
> in the litigation, Bailey has established a property
> interest in his employment, . . .

The Court agrees, and finds that the Amended Complaint in this case

sets forth sufficient facts to establish a plausible claim of a

property interest in plaintiff's employment.

**(2) Liberty Interest:**

Plaintiff also alleges that he enjoyed a liberty interest in

his own good name, his right to pursue his chosen career path, and

his right to take advantage of other employment opportunities.

(Doc. #24, ¶ 105.) Damage to reputation in connection with

termination of employment may give rise to an actionable procedural

due process claim. Cotton v. Jackson, 216 F.3d 1328, 1330 (11th

Cir. 2000). To recover on such a claim, plaintiff must allege and

establish "(1) a false statement, (2) of a stigmatizing nature, (3)

attending a governmental employee's discharge, (4) [was] made

public, (5) by the governmental employer, (6) without a meaningful

opportunity for an employee name clearing hearing." Id. The name

clearing hearing may be held either before or after the termination

or publication. Id. "[T]he presence of stigmatizing information

placed into the public record by a state entity, pursuant to a

state statute or otherwise, constitutes sufficient publication to

implicate the liberty interest under the due process clause of the

fourteenth amendment to the United States Constitution." <u>Buxton v. Plant City, Fla.</u>, 871 F.2d 1037, 1046 (11th Cir. 1989).

The Amended Complaint sufficiently alleges a liberty interest in connection with the termination of plaintiff's employment. Plaintiff alleges the Report prepared by the FDLE contained false statements concerning conduct which is certainly stigmatizing and which were released to the public and placed in his personnel file. The adequacy of the name clearing hearing is addressed below.

**(3) Process Due:**

While the Amended Complaint sufficiently alleges both a property interest and a liberty interest, it must also allege an insufficient process was provided. "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." <u>McKinney v. Pate</u>, 20 F.3d 1550, 1557 (11th Cir. 1994)(en banc). In other words, "procedural due process violations do not even exist unless no adequate state remedies are available." <u>Cotton</u>, 216 F.3d at 1331 n.2. This rule applies to both property-interest and liberty-interest procedural due process claims. <u>Cotton</u>, 216 F.3d at 1331 n.1.

Federal constitutional standards determine what process plaintiff was due. <u>Bailey v. Bd. of County Comm'rs of Alachua County</u>, 956 F.2d 1112, 1122 (11th Cir. 1992). As a constitutional matter, the deprivation of life, liberty or property must be

proceeded by notice and the opportunity to be heard. <u>Harrison v.</u>
<u>Wille</u>, 132 F.3d 679, 683 (11th Cir. 1998).

The Court concludes that the facts pled in the Amended
Complaint show no constitutionally insufficient process either as
to the pre-termination procedures or the post-termination name
clearing hearing. The incident occurred on March 13, 2008.
Plaintiff was hand delivered a Memorandum of Administrative Leave
(Doc. #24-2) and a Memorandum (Doc. #24-3) concerning the
administrative investigation the same day. The Memorandum
concerning the administrative investigation informed plaintiff that
he was the subject of an administrative investigation, that there
were two alleged violations and specifically identified both rules,
that he may be afforded rights under the provision of one Florida
statute and was afforded additional rights under another Florida
statute. Interviews were conducted, including an interview of
plaintiff with counsel. Plaintiff was verbally advised of the
results of the investigation, and given a written Termination of
Employment (Doc. #24-4) which included advice concerning the right
to request a name clearing hearing, and given the oral option of
resigning in lieu of dismissal. This process was sufficient to
comply with the Fourteenth Amendment procedural guarantees.
<u>Harrison</u>, 132 F.3d at 683-84.

The post-termination procedures also complied with procedural
due process requirements. As noted above, the termination
Memorandum informed plaintiff of his right to a name clearing

hearing.  Plaintiff requested and was given such a hearing.  A letter (Doc. #24-6) attached to the Amended Complaint indicates that plaintiff was represented by two attorneys, that both attorneys and plaintiff made presentations during the hearing, which lasted almost two hours, and that written material was received from plaintiff.  While the result of the hearing was not favorable to plaintiff, the process satisfied constitutional mandates of notice and an opportunity to be heard.

Additionally, the Florida state courts provide an adequate remedy for the procedural deprivation plaintiff claims he suffered.  Florida recognizes a private cause of action for injunctive relief for violations of FLA. STAT. § 112.532.  FLA. STAT. § 112.534; Bailey v. Bd. of County Comm'rs, 659 So. 2d 295, 300-01 (Fla. 1st DCA 1994).  For this reason, there is no federal procedural due process violation.  Horton v. Bd. of County Comm'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000).

Thus, while the Amended Complaint adequately alleges the first two elements of a procedural due process claim, its allegations establish that the third element is not satisfied.  Therefore, no cause of action is set forth in either Count I or Count II.[4]

Accordingly, it is hereby

---

[4]Given this finding, the Court need not address defendant's qualified immunity claim as to Count II.  Additionally, the Court has accepted the Amended Complaint's allegation that plaintiff's resignation was not voluntary, and need not resolve the contrary claim made by defendant.

**ORDERED AND ADJUDGED:**

1.  Defendant's Motion to Dismiss Plaintiff's Supplemental and Amended Complaint (Doc. #22) is **GRANTED** and the Supplemental and Amended Complaint is **dismissed.**

2.  The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___30th___ day of June, 2009.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record